**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

**IRENE CHENOWETH,**

    **Plaintiff,**

v.                                                **Civil Action No.: 5:11-CV-60
JUDGE STAMP**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING
THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [17], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15],
AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE**
_____

## I.    INTRODUCTION

On April 19, 2011, Plaintiff Irene Chenoweth ("Plaintiff"), by counsel Phillip S. Isner, Esq., filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). ( ECF No. 1.) On June 14, 2011, Plaintiff filed an Amended Complaint in this Court. (ECF No. 7.) On June 27, 2011, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. (Answer, ECF No. 8; Administrative Record, ECF No. 9.) On August 24, 2011, and September 19, 2011, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment. (Pl.'s Motion for Summ, J., ECF No. 15; Def.'s Motion for Summ. J., ECF No. 17.) Following review of the motions by the parties and the transcript of the administrative proceedings, the undersigned Magistrate Judge now issues this

Report and Recommendation to the District Judge.

## II.　BACKGROUND

*A　Procedural History*

Plaintiff was granted Supplemental Security Income ("SSI") benefits after filing an application on April 29, 1994. (Amended Complaint, ¶ 4.) On November 25, 2005, Plaintiff completed a Statement for Determining Continuing Eligibility for Supplemental Security Income Payments. (R. at 107-10.) The Administration scheduled Plaintiff for a folder review; however, Plaintiff did not attend this appointment. (R. at 24-25.) Upon further review, Plaintiff confirmed resources totaling $3,000 after selling land that she and her eight siblings inherited from their mother. (R. at 105-06.) On May 3, 2006, the Administration requested "proof of the appraised value, proof of any sales of the property. . . and bank statements for the estate account from March 2005 to the present date" for the property Plaintiff and her siblings inherited from their mother. (R. at 93-94.) Plaintiff never responded with the requested information.

On June 2, 2006, Defendant informed Plaintiff that she had been overpaid by $16,152.00 from January 2004 to May 2006. (R. at 97-104.) According to Defendant, Plaintiff could not receive SSI during this period because her available resources exceeded the SSI limit. (R. at 102.) Plaintiff then filed a Request for Reconsideration (R. at 96) and a Waiver of Overpayment Recovery (R. at 62-69). In her Request, Plaintiff asserted that she was not "entitled to any of the estate money yet." (R. at 96.) On September 29, 2007, Defendant mailed Plaintiff a Notice of Reconsideration informing her that she was not eligible for SSI benefits beginning January 1, 2004. (R. at 58-60.)

On November 26, 2007, Plaintiff filed a written request for a hearing, which was held in Morgantown, West Virginia, before a United States Administrative Law Judge ("ALJ") on

December 16, 2008. (R. at 16-20, 38, 196-245.) On February 10, 2009, the ALJ issued an unfavorable opinion to Plaintiff, finding that she was not eligible to receive SSI benefits from April 2004 through May 2006 because of excess resources available to her. (R. at 12-15.) On February 18, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 2-4.) Plaintiff now requests judicial review of the ALJ's decision finding her ineligible to receive SSI benefits for the period of April 2004 to May 2006.

## B. *Personal and Testimonial History*

Plaintiff is one of nine children born to Louise E. Light. (R. at 193.) According to Plaintiff's mother's Last Will and Testament, the residue of her estate was to be equally distributed among her nine children. (R. at 193-95.) Plaintiff and her sister, Linda Jack, were named as co-executrices of the estate. (R. at 193.) The will also directed the executrices to sell all of the estate and to include the net proceeds as part of the residuary estate. (*Id.*)

At her death, Ms. Light's estate included three parcels of real estate. (R. at 154-61.) One parcel was sold for $18,795.52 (R. at 115, 121), and a second parcel was sold for $9,500 (R. at 145-50). The proceeds from these sales were deposited in the bank account maintained for Plaintiff's mother's estate. (*See* R. at 201-203.) This bank account was titled as "Louise E. Light (Estate)[;] Irene Chenoweth (and) Linda Jack-Exec's." (*See, e.g.,* R. at 72.)

At the hearing before the ALJ, Plaintiff testified that she had "authority' over the bank account and that she, along with her sister, distributed proceeds from the estate account to her eight siblings. (R. at 216, 218, 220.) However, Plaintiff's share of the proceeds remained in the bank account. (R. at 220-21.) Bank statements provided to the ALJ showed an ongoing balance of approximately $3,500 in this bank account from March 2005 to June 2006. (R. at 72-92.) At the

hearing, Plaintiff's attorney proffered that this $3,500 was Plaintiff's one-ninth share of the proceeds from the sale of the two parcels of land. (R. at 204.) However, later in the hearing, Plaintiff's attorney stated that he believed the distribution to be $3,166 each. (R. at 230.) According to Plaintiff, she chose to leave her share in the bank account until the estate was fully settled. (R. at 219-21, 223.) Plaintiff testified that she made this decision after relying on statements made by a representative at the Administration's office in Elkins, West Virginia. (R. at 208). However, Plaintiff and her attorney acknowledged an understanding that once the Administration became aware of her inheritance, she could lose eligibility for SSI benefits. (R. at 203, 214-15.)

At the hearing, Plaintiff's attorney informed the ALJ that Plaintiff had been removed as co-executrix in 2007 by the County Commission. (R. at 222.) Because of this, Plaintiff's name was removed from the estate bank account. (R. at 229-30.) At the end of the hearing, the ALJ agreed to hold the record open for additional documentation for thirty days. (R. at 241.) However, Plaintiff submitted no additional documentation. (R. at 6.)

### III. CONTENTIONS OF THE PARTIES

Plaintiff, in her motion for summary judgment, alleges that the ALJ's decision is not supported by substantial evidence. (Pl.'s Motion for Summ. J. at 1.) Specifically, Plaintiff alleges that the ALJ erred as a matter of law in determining that Plaintiff was not eligible to receive SSI benefits from April 2004 through May 2006 because she had excess resources at her disposal. (Pl.'s Mem. in Supp. of Mot. for Summ. J.("Pl.'s Mem.") at 4, ECF No. 16.)[1] According to Plaintiff, the proceeds from the sales of two of the three parcels of land should not have been disbursed until the

---

[1] Plaintiff failed to number the pages of her Memorandum in Support of Motion for Summary Judgment. Therefore, when the Court uses page numbers, the page numbers refer to the pages document filed on CM/ECF.

entire estate had been settled. (Pl.'s Mem. 4-5.) Therefore, Plaintiff contends that the ALJ should not have considered her share of these proceeds as personal resources. (*Id.* at 5.)

Defendant asserts that the decision of the ALJ is supported by substantial evidence and should be affirmed as a matter of law. (Def.'s Mot. for Summ. J. at 1.) Specifically, the Commissioner asserts that the ALJ properly deemed the funds in the bank account as a "countable resource" that rendered Plaintiff ineligible for SSI benefits. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 9, ECF No. 18.)

## IV. STANDARD OF REVIEW

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") applies the following standards in reviewing the decision of an ALJ in a Social Security disability case:

> Judicial review of a final decision regarding disability benefits . . . is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ( "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938)) . . . . If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir. 1962).

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has defined substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws,* 368 F.2d at 642.

Because review is limited to whether there is substantial evidence to support the ALJ's conclusion, "[t]his Court does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Furthermore, **"the language of § 205(g) . . . requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"** *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (emphasis added).

### V. DISCUSSION

*A.    Discussion of the Administrative Law Judge's Decision*

After reviewing the entire record, the ALJ made the following findings:

1. **The claimant's mother, Louise Light, passed away February 16, 2003 leaving her estate, which consists of three parcels of land, to her nine heirs.**

2. **The claimant is one of the nine heirs.**

3. **Two of the parcels of land have been sold and disbursements have been made to the eight heirs, excluding the claimant.**

4. **One parcel of land remains to be sold.**

5. **The claimant's share of the proceeds from the sale of the two parcels of land is in a bank account which was in the claimant's name at the time of the resource determinations.**

6. **The balance in the bank account is the claimant's countable resource.**

7. **The balance exceeds the claimant's $2,000 resource limit.**

8. **Because of the excess resources, the claimant is not eligible to receive Supplemental Security Income payments for the period April 2004 through May 2006.**

(R. at 14-15.)

B.  *Review of the Administrative Law Judge's Decision*

   1.  **Standards for Determining Whether a Financial Account is a Countable Resource**

Under Title XVI of the Social Security Act, eligibility for disabled individuals to receive SSI benefits is based upon meeting income and resource restrictions. *See* 42 U.S.C. § 1382(a)(1)(A)-(B) (2006). Currently, a disabled individual with no spouse may be eligible to receive SSI benefits only if the value of his or her nonexcludable resources does not exceed $2,000 and other eligibility requirements are completely met. *See* 20 C.F.R. § 416.1205(a),(c) (2011). Resources include "cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). A determination of whether an asset or property is a resource turns on whether the individual "has the right, authority or power to liquidate the property or his or her share of the property." 20 C.F.R. § 416.1201(a)(1). For example, if an individual has the legal right to liquidate her share of inherited property, the share qualifies as a resource. *See Chalmers v. Shalala*, 23 F.3d 752, 755 (3d Cir. 1994) (finding that Chalmers had excess resources because she had the ability to sell her one-fourth interest in the inherited real property or to bring an action to partition the property).

The Social Security Administration also categorizes resources as liquid and nonliquid resources. Liquid resources are those that are able to be converted to cash within twenty days; an example of a liquid resource is an account held at a financial institution. 20 C.F.R. § 416.1201(b). These resources, other than cash, are "evaluated according to the individual's equity in the resources." *Id.* Nonliquid resources include non-cash property and property that cannot be converted to cash within twenty days; an example of a nonliquid resource is land. 20 C.F.R. § 416.1201(c)(1). These resources are normally evaluated "according to their equity value." *Id.*

The Administration makes a determination of countable resources "as of the first moment of the month" and bases this determination on the assets held by an individual, the value of those assets, and whether they should be excluded. 20 C.F.R. § 416.1207(a).

The Administration has promulgated regulations to determine when funds held in financial institution accounts should be counted as resources. In general, funds in an account "are an individual's resource if the individual owns the account and can use the funds for his or her support and maintenance." 20 C.F.R. § 416.1208(a). This is decided by determining how the individual holds the account, which in turn is determined by how the account is titled. *Id.* If an account is jointly held and only one of the holders is an SSI claimant or recipient, the Administration "presume[s] that all of the funds in the account belong to that individual." 20 C.F.R. § 416.1208(c)(1). However, the Administration also allows an individual to present evidence to rebut this presumption. 20 C.F.R. § 416.1208(c)(3). To successfully rebut the presumption, the evidence must establish "that the individual does not own some or all of the funds." *Id.* To rebut, the individual must (1) submit statements regarding ownership of the funds, who has made deposits and withdrawals, and how withdrawals have been spent; (2) submit account records for the months in which ownership is at issue; and (3) correct the account title to show that the individual is no longer a co-owner or separate the funds if the individual owns a portion of the funds. 20 C.F.R. § 416.1208(c)(4)(i)-(iii); *see also Nicolae v. Barnhart*, No. 04-CV-2068 (FB), 2005 WL 715929, at *1 (E.D.N.Y. Mar. 28, 2005) (discussing the procedure for rebutting ownership presumptions).

The Administration's Program Operations Manual System ("POMS") contains regulations concerning checking accounts that are helpful in determining whether an account is a countable resource. Even though it is not legally binding, the POMS is entitled to some deference because

these guidelines "represent the Commissioner's interpretation of the governing statutes and regulations." *Wilson v. Apfel*, 81 F. Supp. 2d 649, 653 (W.D. Va. 2000); *see also Danielson v. Astrue*, No. 1:10-cv-125, 2011 WL 1485995, at *3 (N.D. W.Va. Mar. 29, 2011) (citing cases). Under POMS, the Administration assumes that "the person shown as owner in the account title has the legal right to withdraw funds from the account." POMS § SI 01140.200(A)(2), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0501140200. Regarding fiduciaries, a fiduciary has the same right to withdraw funds as does an owner. *Id.* Furthermore, someone who has the legal right to withdraw is also assumed to have the legal right to use those funds for personal support. POMS § SI 01140.200(A)(5). The POMS regulations also presume that all funds in an account belong to an SSI claimant or recipient if the claimant is an account holder. POMS § SI 01140.205(B)(1), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0501140205.

### 2. Standard for Determining When an Inheritance is a Countable Resource

An extensive search revealed a dearth of cases regarding when a financial account established to manage a decedent's estate should be regarded as an SSI claimant's countable resource. However, the POMS contains instructions for how to treat an inheritance or an unprobated estate as a resource. According to the POMS, an unprobated estate can be a resource if the claimant is an heir or relative of the deceased or receives any income from the property. *See* POMS § SI 01120.215(A), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120215. An SSI claimant has an ownership interest in the estate if documents indicate that the individual is the decedent's heir or if the individual receives income from the decedent's property. POMS § SI 01120.215(A)(2).

Recently, the United States Court of Appeals for the Third Circuit ("Third Circuit") issued

an opinion on whether proceeds from the sale of an SSI claimant's marital home that were being jointly held in an escrow account pending equitable distribution should be considered the claimant's countable resource for determining SSI eligibility. *Kelley v. Comm'r*, 566 F.3d 347, 347 (3d Cir. 2009). The Third Circuit determined that the ALJ properly classified these proceeds as a countable resource that rendered Kelley ineligible for SSI payments. *Id.* at 353. In so finding, the Third Circuit noted that the POMS directs that an escrow account be treated as a legal instrument or device similar to a trust. *Id.* at 350 n.7 (citing POMS § SI 01120.201(G)(2)). The POMS states that a legal instrument that is similar to a trust is one that involves (1) a grantor who transfers property or whose property is transferred by another; (2) the property being transferred to an individual with fiduciary obligations; and (3) the grantor transferring the property "to be held, managed, or administered by the individual . . . for the benefit of the grantor or others." POMS § SI 01120.201(G)(1), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120201. Furthermore, a legal instrument similar to a trust can include "other similar devices managed by an individual or entity with fiduciary obligations." POMS § SI 01120.201(G)(2). Therefore, because Kelley and her husband would each receive either payments from the escrow account or the benefit of payments from the account, the proceeds were properly counted as Kelley's resource. *Kelley*, 566 F.3d at 351.

### 3. The ALJ Properly Determined that the Estate Bank Account Was Plaintiff's Countable Resource

As her only assignment of error, Plaintiff asserts that the ALJ erred in determining that Plaintiff had excess resources from April 2004 through May 2006 and therefore was not eligible for SSI benefits. (Pl.'s Mem. at 4.) To support her argument, Plaintiff alleges that the ALJ should not have found that she had excess resources because she "did not have the legal right to use the funds contained in the estate bank account for her personal benefit." (*Id.* at 5.) According to Plaintiff, her

inheritance should not be considered a resource until the estate is settled, and the estate has not yet been settled. (*See id.*) However, Plaintiff's argument is without merit because substantial evidence supports the ALJ's decision to include the funds remaining in the bank account as Plaintiff's countable resource.

The estate bank account qualifies as a liquid resource. 20 C.F.R. § 416.1201(b). Here, the evidence in the record shows that the estate bank account was titled as "Louise E. Light (Estate)[;] Irene Chenoweth (And) Linda Jack–Exec's." (R. at 72-92.) Therefore, because the account was jointly held and there was only one SSI claimant or recipient (Plaintiff) listed on the account title, the ALJ correctly applied the presumption that all of the funds in the account belonged to Plaintiff. *See* 20 C.F.R. § 416.1208(c)(1); *see also* POMS § SI 01140.205(B)(1). As an owner, Plaintiff had the legal right to withdraw funds from this account, and the Administration also assumed that she had the right to use those funds for personal support. POMS §§ SI 01140.200(A)(2); SI 01140.200(A)(5). At the hearing before the ALJ, Plaintiff testified that she had "authority' over the bank account and that she, along with her sister, distributed proceeds from the estate account to her eight siblings. (R. at 216, 218, 220.) Plaintiff's share of the proceeds remained in the bank account. (R. at 220-21.) Therefore, because the estate bank account was in Plaintiff's name and she had previously exercised her legal right to withdraw funds from the account to provide her siblings with their share, the ALJ correctly determined that Plaintiff had the right to withdraw her share and use those funds for her personal support. Plaintiff also had an ownership interest in the proceeds in the bank account because of her status as her mother's heir and because she received a benefit from the sale of her mother's property. *See* POMS § SI 01120.215(A)(2). Because of this, the ALJ properly classified the funds in the account–which included Plaintiff's inheritance–as Plaintiff's countable

resource.  *See* POMS § SI 01120.215(A).

Furthermore, Plaintiff has not successfully rebutted the ownership presumption relied upon by the ALJ.  At the hearing, Plaintiff's attorney informed the ALJ that Plaintiff had been removed as co-executrix in 2007 by the County Commission.  (R. at 222.)  Because of this, Plaintiff's name was removed from the estate bank account.  (R. at 229-30.)  At the end of the hearing, the ALJ agreed to hold the record open for additional documentation for thirty days.  (R. at 241.)  However, Plaintiff did not submit any proof showing that her name had been removed from the account, nor did she provide proof regarding the ownership of the approximately $3,500 remaining in the account.  Therefore, substantial evidence exists to support the ALJ's decision that the estate bank account was Plaintiff's countable resource and that she did not successfully rebut the ownership presumption.

When she served as co-executrix of her mother's estate, Plaintiff served in a fiduciary capacity.  Here, like in *Kelley*, it appears that the estate bank account qualifies as a legal instrument that is like a trust because it is a "similar device[] managed by an individual or entity with fiduciary obligations."  POMS § SI 01120.201(G)(2).  Here, Plaintiff's mother's will directed that Plaintiff and her sister serve as co-executrices and sell her entire estate so that the proceeds because part of the residue of her estate.  (R. at 193.)  After the sale of the property, Plaintiff and her siblings were to benefit from the proceeds.  In effect, these actions satisfy the requirements for the account to be treated like a trust.  *See* POMS § SI 01120.201(G)(1).  Plaintiff's mother directed the "transfer" of the property to the care of Plaintiff and her sister so that it could be sold and Plaintiff and her siblings could reap the benefits of the proceeds.

In support of her argument, Plaintiff states that she did not have access to her portion of the

proceeds because the funds should not have been disbursed before her mother's estate was settled. (Pl.'s Mem. at 5.) However, in *Kelley*, the Third Circuit rejected Kelley's argument that her portion of the funds in the escrow account should not be included as a countable resource. *Kelley*, 566 F.3d at 352. In reading the statute, the Third Circuit noted that "an individual's countable resources include assets that have been transferred to a trust-like instrument to the extent payment from the instrument 'could be made to or for the benefit of the individual,' regardless of whether the individual has access to the funds." *Id.* (quoting 42 U.S.C. § 1382b(e)).

In Plaintiff's case, there is substantial evidence to support the ALJ's findings that the funds in the bank account were available for Plaintiff's use. At the hearing, Plaintiff testified that she and her sister had already authorized payments from the bank account to their siblings. (R. at 216, 218, 220.) However, Plaintiff chose to leave her share in the bank account. (R. at 220-21.) If Plaintiff was able to access the funds in the bank account to direct payments to benefit her siblings, it stands to reason that she could have authorized a payment to herself representing her share of the proceeds after obtaining her sister's consent as co-executrix. Therefore, because accessibility at will is immaterial, *see Kelley*, 566 F.3d at 352, Plaintiff's argument is without merit.

## VI.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision that Plaintiff is not eligible to receive Supplemental Security Income benefits for the period from April 2004 to May 2006 is supported by substantial evidence. Accordingly, I **RECOMMEND** that Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) be **DENIED**, and the decision of the Commissioner be affirmed and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Respectfully submitted this **5th** day of **October, 2011.**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE